FILED IN CLERK'S OFFICE
U.S.D.C. - Atlanta

OCT 14 2026

KEVIN P. WEIMER, Clerk
By: [signature] Deputy Clerk

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

JAKEME-JAMAR CLARKE,

Plaintiff, Civil Action File No. 1:26-CV-6170

v.

CAVALRY PORTFOLIO SERVICES, LLC, JURY TRIAL DEMANDED

Defendant.

# COMPLAINT FOR DAMAGES UNDER THE FAIR CREDIT REPORTING ACT

Plaintiff Jakeme-Jamar Clarke ("Plaintiff"), proceeding pro se, states the following complaint against Defendant Cavalry Portfolio Services, LLC ("Cavalry"):

## I. PRELIMINARY STATEMENT

1. This is an action for actual, statutory, and punitive damages under the Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq. ("FCRA"), arising from Cavalry's furnishing of a collection account of $14,286 to national consumer reporting agencies on the consumer file of a person who does not owe it — and Cavalry's subsequent "verification" of that account, within approximately three days of Plaintiff's dispute, without conducting the reasonable investigation that 15 U.S.C. § 1681s-2(b) requires.

2. The controlling law of this Circuit is direct: "When a furnisher does not already possess evidence establishing that an item of disputed information is true, § 1681s-2(b) requires the furnisher to seek out and obtain such evidence before reporting the information as 'verified.'" *Hinkle v. Midland Credit Management, Inc.*, 827 F.3d 1295 (11th Cir. 2016).

## II. JURISDICTION AND VENUE

3. This Court has subject-matter jurisdiction under 28 U.S.C. § 1331 and 15 U.S.C. § 1681p.

4. Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claim occurred here: Cavalry furnished, and later verified, derogatory information appearing in the consumer reporting files of a resident of this District, and the resulting injury was suffered in this District. Venue is also proper under 28 U.S.C. § 1391(b)(1) and (c)(2) because Cavalry is subject to personal jurisdiction in this District and therefore resides here for venue purposes.

5. Plaintiff resides in DeKalb County, Georgia, which lies within the Atlanta Division of this Court. 28 U.S.C. § 90(a)(2).

## III. PARTIES

6. Plaintiff is a natural person residing in Stone Mountain, DeKalb County, Georgia, and is a "consumer" as defined by 15 U.S.C. § 1681a(c).

7. Defendant Cavalry Portfolio Services, LLC is a foreign limited liability company that services and collects consumer debts, including debts acquired by affiliated debt-buying entities, and that regularly furnishes information concerning consumers to consumer reporting agencies. Cavalry is a "person" as defined by 15 U.S.C. § 1681a(b) and a furnisher of information subject to 15 U.S.C. § 1681s-2. Cavalry may be served at its registered-agent address: 600 North 2nd Street, Suite 401, Harrisburg, PA 17101.

## IV. FACTUAL ALLEGATIONS

### A. Cavalry reports a $14,286 collection account that does not belong to Plaintiff.

8. In or about December 2025, Cavalry began furnishing to consumer reporting agencies a collection tradeline in Plaintiff's name, reported as "opened" December 29, 2025, in the amount of $14,286 (the "Account").

9. Plaintiff has never opened an account with Cavalry, has never had any business relationship with Cavalry, has never received credit from or made payment to Cavalry, and does not owe the debt Cavalry reports. Plaintiff is likewise unaware

of any underlying account with any original creditor that Cavalry or its affiliates could have acquired and attributed to him. The Account is simply not his.

10. The Account appeared on Plaintiff's TransUnion consumer file. A true and correct copy of the tradeline as it appeared to Plaintiff, showing "CAVALRY PORTFOLIO SERVICES — $14,286 — Opened Dec 29, 2025," is attached as Exhibit A.

11. The Account was also furnished by Cavalry to Experian (reported there under partial account number 236878XX as a collection account with $14,286 past due as of July 2026) and to Equifax (appearing on Plaintiff's Equifax file, account ending 7850, as of a report dated June 24, 2026).

12. The Account's presence on Plaintiff's consumer reports has been devastating to his credit standing. On July 29 and 30, 2026, Plaintiff received three adverse-action notices: Figure Lending LLC denied his application for a home equity line, based on his Experian report, citing among other factors "[s]erious delinquency, and public record or collection filed"; Mission Lane LLC (with Transportation Alliance Bank, Inc. d/b/a TAB Bank) denied his credit-card application based on his TransUnion report; and Aspire Credit Card (The Bank of Missouri) denied his credit-card application based on his TransUnion report, citing delinquent and derogatory account information.

**B. Plaintiff disputes the Account through TransUnion; Cavalry "verifies" it within days.**

13. On July 29, 2026, Plaintiff submitted a dispute of the Account to TransUnion (Dispute No. 1856722840), disputing the Account on the ground that it does not belong to him. The account Plaintiff disputed in Dispute No. 1856722840 is the Cavalry Account; in the consumer-facing dispute interface through which Plaintiff submitted and tracked the dispute, the disputed item is displayed under the trade name "BARCLAYS." A true and correct copy of the dispute-status record — showing the dispute submitted to TransUnion and in review on July 29, 2026, resolved on August 1, 2026, and the disputed item "Denied" — is attached as Exhibit B.

14. Upon information and belief, within five business days of receiving Plaintiff's dispute, TransUnion provided Cavalry notice of the dispute, together with all relevant information TransUnion had received from Plaintiff, through the industry-standard e-OSCAR system, as 15 U.S.C. § 1681i(a)(2) required TransUnion to do.

15. Upon receipt of that notice, Cavalry was required by 15 U.S.C. § 1681s-2(b)(1) to "conduct an investigation with respect to the disputed information," to "review all relevant information provided by the consumer reporting agency," to

"report the results of the investigation to the consumer reporting agency," and, if the information was inaccurate, incomplete, or could not be verified, to modify, delete, or permanently block its reporting.

16. On or about August 1, 2026 — approximately three days after the dispute was submitted — TransUnion reported the dispute resolved and the disputed item "Denied": upon information and belief, Cavalry had responded to TransUnion's notice by verifying the Account as accurate, and the Account remained on Plaintiff's file. (Ex. B.)

17. Upon information and belief, Cavalry's "investigation" consisted of nothing more than a cursory comparison of the disputed tradeline against Cavalry's own internal electronic data — the very data from which it generated the reporting in the first place — followed by a form verification response transmitted through e-OSCAR.

18. Upon information and belief, at the time it verified the Account, Cavalry did not possess account-level documentation — such as a signed application, account agreement, billing statements addressed to Plaintiff, or a complete chain of title for the alleged debt — establishing that Plaintiff owns or owes the Account, and Cavalry made no attempt to seek out or obtain any such documentation before reporting the Account as verified.

19. An ownership dispute by a consumer who has never had any relationship with the furnisher cannot be reasonably investigated by re-reading the furnisher's own data entries. The speed of Cavalry's response — verification of a $14,286 stranger debt in roughly seventy-two hours — reflects a rubber-stamp process, not the investigation the statute requires.

20. Plaintiff also disputed the Account with Equifax on or about July 29, 2026 (Confirmation No. 6210606692), expressly stating: "This account does not belong to me. I am requesting account level documentation from the furnisher to substantiate the reporting and ownership of this alleged debt." Plaintiff further disputed the Account with Experian by telephone on or about July 31, 2026, after Experian's online portal declined to accept the dispute electronically. Upon information and belief, those disputes generated additional statutory notices to Cavalry under 15 U.S.C. § 1681i(a)(2).

**C. Continuing harm.**

21. Because Cavalry verified rather than corrected or deleted the Account, the Account has remained on Plaintiff's consumer reports after August 1, 2026, where it continues to suppress Plaintiff's credit scores, to brand him as the debtor on a $14,286 collection he does not owe, and to impair his access to credit.

22. As a direct and proximate result of Cavalry's conduct, Plaintiff has suffered damages including: continued derogatory reporting of an account that is not his; suppression of his credit scores and creditworthiness; emotional distress, including stress, anxiety, frustration, and humiliation; and lost time and out-of-pocket expense devoted to correcting Cavalry's reporting.

## V. COUNT I — NEGLIGENT NONCOMPLIANCE WITH 15 U.S.C. § 1681s-2(b) (15 U.S.C. § 1681o)

23. Plaintiff incorporates the foregoing paragraphs as if fully restated here.

24. The Account, as furnished and verified by Cavalry, is inaccurate: it reports Plaintiff as owing a $14,286 collection debt that is not his.

25. Plaintiff disputed the Account to TransUnion, and TransUnion notified Cavalry of the dispute pursuant to 15 U.S.C. § 1681i(a)(2).

26. After receiving notice, Cavalry negligently failed to comply with its duties under 15 U.S.C. § 1681s-2(b)(1): it failed to conduct a reasonable investigation of the disputed information; failed meaningfully to review the relevant information transmitted by TransUnion; verified information it did not possess evidence to establish as true and made no effort to seek out such evidence; and failed to report that the Account was inaccurate or unverifiable and to modify, delete, or block it.

27. As a direct and proximate result, Plaintiff suffered the actual damages described above, for which Cavalry is liable under 15 U.S.C. § 1681o(a), together with costs and reasonable attorney's fees.

## VI. COUNT II — WILLFUL NONCOMPLIANCE WITH 15 U.S.C. § 1681s-2(b) (15 U.S.C. § 1681n)

28. Plaintiff incorporates the foregoing paragraphs as if fully restated here.

29. Cavalry's conduct was willful, or at minimum in reckless disregard of its statutory duties. Since 2016, published Eleventh Circuit authority has held that a furnisher that does not already possess evidence establishing that disputed information is true must seek out and obtain such evidence before reporting the information as verified. Cavalry, a sophisticated, high-volume debt servicer that responds to consumer disputes through e-OSCAR as a routine business function, knew or recklessly disregarded that verifying a total-stranger ownership dispute in approximately three days, without account-level documentation and without seeking any, does not satisfy § 1681s-2(b).

30. Cavalry is therefore liable under 15 U.S.C. § 1681n(a) for actual damages or statutory damages of not less than $100 and not more than $1,000, punitive damages as the Court may allow, and costs and reasonable attorney's fees.

## VII. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in his favor and against Cavalry Portfolio Services, LLC, awarding:

(a) actual damages under 15 U.S.C. §§ 1681n(a)(1)(A) and 1681o(a)(1);

(b) statutory damages of not less than $100 and not more than $1,000 under 15 U.S.C. § 1681n(a)(1)(A);

(c) punitive damages under 15 U.S.C. § 1681n(a)(2);

(d) costs of this action, together with reasonable attorney's fees to the extent permitted by 15 U.S.C. §§ 1681n(a)(3) and 1681o(a)(2); and

(e) such other and further relief as the Court deems just and proper.

## VIII. DEMAND FOR JURY TRIAL

31. Pursuant to Federal Rule of Civil Procedure 38, Plaintiff demands a trial by jury on all issues so triable.

Respectfully submitted, 08/02/2026

Jakeme-Jamar Clarke
Plaintiff, pro se
984 Lost Creek Cir
Stone Mountain, GA 30088
info@clarktextile.com

# EXHIBIT A

TransUnion tradeline: CAVALRY PORTFOLIO SERVICES — $14,286 — Opened Dec 29, 2025

**CAVALRY PORTFOLIO SERVICES** **$14286**

Opened Dec 29, 2025

# EXHIBIT B

TransUnion Dispute No. 1856722840 (Cavalry Portfolio Services account)
Submitted July 29, 2026 — In review July 29, 2026 — Resolved August 1, 2026 — Dispute denied

5:51

LTE

INTUIT
creditkarma

# Dispute details

Dispute **1856722840**

**Sent to TransUnion**
Submitted Jul 29, 2026

**In review**
On Jul 29, 2026

**Resolved**
On Aug 01, 2026

Need to send TransUnion additional information?
**Here's how to contact them**

**BARCLAYS** **Denied**

For you Cards Loans Insurance Money